## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**                                     **Case No. 1:24-cr-94-APM-1**
                                           **MDFL Case No. 8:24-mj-1280-AAS**

**THOMAS PAUL OSBORNE**

_____/

## DEFENDANT'S APPEAL OF MAGISTRATE JUDGE'S
## ORDER OF DETENTION PENDING TRIAL

Defendant Thomas Paul Osborne, through undersigned counsel, moves

this Court pursuant to 18 U.S.C. §§ 3142 and 3145(b) to reconsider and

reverse the magistrate judge's Order denying Mr. Osborne's motion for

release. *See U.S. v. Osborne*, Case No. 8:24-mj-1280-AAS (MDFL), Doc. 9. Mr.

Osborne requests this Court hold a hearing on this matter.

### Procedural History

### A.    Initial Appearance and Detention Hearing

On February 23, 2024, Mr. Osborne appeared before the magistrate

judge in the Middle District of Florida, Tampa Division, on a Rule 5(c)

proceeding and the indictment filed in the instant case. Doc. 1; *see* Case No.

8:24-mj-1280-AAS (MDFL), Doc. 6. The indictment alleges four counts related

to the events at the U.S. Capitol Building on January 6, 2021:  Count One—

civil disorder in violation of 18 U.S.C. § 231(a)(3), Count Two—entering and

remaining in a restricted building or grounds in violation of 18 U.S.C. §

1752(a)(1), Count Three—disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2), and Count Four—disorderly conduct in a Capitol Building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D). Doc. 1.

At the February 22, 2024 hearing, the magistrate judge appointed the Office of the Federal Defender to represent Mr. Osborne for the initial appearance proceedings in Tampa. *See* Case No. 8:24-mj-1280-AAS, Doc. 12, Initial Appearance and Detention Hearing Tr. at 6. Mr. Osborne waived his right to an identity hearing and asked the magistrate judge to impose conditions of release. Tr. at 10-11.

Counsel for the Government sought detention of Mr. Osborne based on serious risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A). Tr. at 11. Government counsel's reasons to support detention because of risk of flight concerns fell into four categories:  Mr. Osborne's association with other January 6th defendants and their family, he had the means to flee, the weight of the evidence, and the number of firearms in his house.

## 1.  Government: Detain because of guilt by association.

Government counsel's guilt by association argument to support Mr. Osborne's detention was as follows:  Mr. Osborne traveled with a group from Polk County, Florida, including the Pollock family. Tr. at 11. Two of the Pollock family members, siblings Jonathan and Olivia Pollock, were charged

federally for their conduct at the Capitol on January 6th; at some point during their criminal proceedings, they were fugitives; and in January 2024, they were apprehended. *Id.* at 12. While they were fugitives, the Pollock parents assisted their adult children in evading law enforcement. *Id.* Since Mr. Osborne was friends with the Pollocks, was in the same prayer group, and worked part-time at a gun store owned by them, Government counsel argued that Mr. Osborne would flee just like Jonathan and Olivia Pollock did. *Id.* at 12-14.

Included in this guilt by association argument was that Mr. Osborne allowed a January 6th defendant named Christopher Worrell to stay at his house in Lakeland, Florida, in December 2023. *Id.* at 14. Mr. Worrell was found guilty after a bench trial, and before the sentencing hearing, he cut his GPS monitor and was a fugitive for about six weeks. *Id.* at 16-17. Government counsel argued that Mr. Osborne "helped Mr. Worrell evade law enforcement detection" by allowing him to stay at his house, however, no evidence was proffered that Mr. Osborne *knew* that Mr. Worrell had cut his GPS monitor and that Mr. Worrell was actively evading law enforcement or a court order. *Id.* at 16-17, 23, 27.

Defense counsel explained that Mr. Osborne has no incentive to flee. First, by the date of the February 22, 2024 initial appearance, Mr. Osborne was three years removed from the January 6th events and had not moved

3

from his home in Lakeland, Florida—a home he co-owns with his father. *Id.*
at 21. This is also the same home where was arrested without incident at
6am on February 22, 2024. *Id.* at 24, 30-31.

   In 2021, when he learned of the investigation against him, Mr. Osborne
did not flee, but turned himself in to the FBI, sought the advice of counsel,
and agreed to interviews with federal agents. *Id.* at 26, 32-33. Mr. Osborne
also fully understood the consequences of fleeing and had no interest in doing
so, having seen what happened to people who violated Court orders,
specifically the Pollocks and Mr. Worrell. *Id.* at 23. Finally, Mr. Osborne has
no passport and has not traveled outside of the U.S. *Id.* at 22. Mr. Osborne is
not motivated to flee, but rather only wanted to be released to his home so he
could face these charges:

> His motivation is to live in his home, where he has been living for
> the past two or so years, and he's lived here before in Lakeland.
> He wasn't arrested today trying to evade arrest. He wasn't
> hiding. The Pollock family wasn't hiding him somewhere. He was
> at his house, that's where he was arrested today, and that where
> I think Your Honor should release him to.

*Id.* at 24. He also wished to be released so he could maintain continued
contact with and visit his father who is not in good health. *Id.* at 25.

   **2. Government: Detain because of the weight of the evidence.**

   Government counsel argued that the weight of the evidence was strong,
in that "it's on video, and he has identified himself to the FBI as being the

4

person in the video." *Id.* at 16, 29. Government counsel described Mr. Osborne's alleged conduct, stating, "Mr. Osborne was struck by an officer as far as – as part of the effort of the officers to push people out of the Capitol, and [Mr. Osborne] reflexively turned around and began to, you know wrestle with the officer, grabbing his baton, so there is physical contact." Tr. at 29. There was no evidence proffered that Mr. Osborne initiated contact or struck the officer. *See id.*

### 3. Government: Detain because he has the means to flee.

Government counsel argued that Mr. Osborne had the means to flee because Mr. Osborne received money from a "trust fund." *Id.* at 19. Defense counsel explained that her understanding was that any trust was money that he received from his family based on money they received from gas rights and that the money was gifted to Mr. Osborne, but was "not a reliable amount of money that he receives." *Id.* at 20.

Government counsel also proffered that survival kits and "go bags" found in Mr. Osborne's home demonstrated an additional reason that he was a risk of flight. *Id.* at 19.

### 4. Government: Detain because of the number of firearms.

Finally, Government counsel argued that the "astonishing number of guns" in Mr. Osborne's home was a basis to detain Mr. Osborne. *Id.* at 17-18. Defense counsel countered that Mr. Osborne was not a felon and was legally

allowed to possess firearms in his home. *Id.* at 24. However, Mr. Osborne also fully understood that he had to remove the firearms from his home as a condition of release and he agreed to do so. *Id.* at 25. Importantly, when Mr. Osborne was arrested, he fully cooperated with law enforcement.

### 5. Defense: Release with proposed Pretrial Services Conditions.

Defense counsel argued that conditions of release should be imposed and that such conditions would assure Mr. Osborne's appearance. *Id.* at 25-26. Defense counsel proposed the Pretrial Services Report's recommendations including:

(1) Release on an unsecured bond
(2) Report to Pretrial Services as directed
(3) Travel restrictions to the Middle District of Florida
(4) Not possess any firearms of dangerous weapons

*See U.S. v. Osborne*, Case No. 8:24-mj-1280-AAS (MDFL), Pretrial Services Report, 2/22/2024, at 4; *see* Tr. at 25-26. Defense counsel also asked for Mr. Osborne to be able to travel to the District in Pennsylvania where his father and sister live. *Id.*

## B. Magistrate Judge's Order of Detention

Following argument from counsel, the magistrate judge detained Mr. Osborne and entered an Order of Detention on February 23, 2024. *See U.S. v. Osborne*, Case No. 8:24-mj-1280-AAS (MDFL), Doc. 9. The magistrate judge's basis for detaining Mr. Osborne stated:

6

(1) during a search of his home, law enforcement located throughout his home numerous bags containing supplies for flight, including camping and survival gear; (2) Mr. Osborne helped convicted January 6th rioter Christopher Worrell evade capture by housing Mr. Worrell after Mr. Worrell cut his ankle monitor following his guilty verdict and four days before his sentencing (Mr. Worrell is now serving a 120 month sentence); (3) when Mr. Osborne was contacted by law enforcement concerning Mr. Worrell's whereabouts he did not provide the information he had; (4) at least two of the individuals with whom Mr. Osborne traveled on January 6th (Olivia and Jonathan Pollock) previously absconded from their prosecutions for their January 6th activities — Olivia Pollock removed her ankle monitor in March 2023 and Jonathan Pollock fled in 2022 (they were tracked down on a ranch in Groveland, Florida[1] in January 2024 and captured); (5) Mr. Osborne has a very close personal relationship with the Pollock family and is employed by the family's business Rapture Guns and Knives; (6) Olivia and Jonathan Pollock's parents act as a surrogate family for Mr. Osborne and the government has evidence that the parents assisted Olivia and Jonathan Pollock with their flight from prosecution; (7) during the search of Mr. Osborne's home, law enforcement discovered an astonishing number of loaded guns (and many more than the five he voluntarily reported to pretrial services) located throughout his home; (8) Mr. Osborne has a trust fund that provides monthly income to him in varying amounts; and (9) the evidence supporting the charges against Mr. Osborne is strong and includes video evidence of Mr. Osborne attacking[2] a law enforcement officer and trying to grab the officer's weapon and Mr. Osborne has already admitted to federal agents that he is the person in the video.

*U.S. v. Osborne*, Case No. 8:24-mj-1280-AAS (MDFL), Doc. 9.

---

[1] The location where the Pollocks were found and captured was not proffered by Government counsel at the February 22, 2024 hearing.

[2] Government counsel did not proffer at the February 22, 2024 hearing that Mr. Osborne "attacked" the officer. *See* Tr. at 29. However, defense counsel notes that she has not seen the video of the incident.

Mr. Osborne now seeks a review and reversal of the order of detention entered on February 23, 2024. *See* Case No. 8:24-mj-1280-AAS (MDFL), Doc. 9. This appeal is timely filed.

**Memorandum of Law**

**A.    Legal Standard**

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment to the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b). "Although the United States Court of Appeals for the District of Columbia Circuit has not ruled on the matter, other circuits have found a magistrate judge's detention order is subject to de novo review." *United States v. Brockhoff*, 590 F.Supp.3d 295, 302 (D.D.C. 2022) (citing *United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017) (identifying cases supporting this proposition from the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits)); *see United States v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir. 1985). The district court is "free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Sheffield*, 799 F. Supp. 2d 18, 19-20 (D.D.C. 2011) (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009)).

When deciding whether there are conditions of release that will reasonably assure the appearance of a defendant and the safety of the community, the Court considers four factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

If, following a hearing, a court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required

9

and the safety of any other person and the community," the court must order the detention of the person before trial. 18 U.S.C. § 3142(e)(1). This finding must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

**B.    The Court Should Reconsider the Magistrate Judge's Order and Impose Pretrial Release Conditions for Mr. Osborne.**

After a de novo review of the magistrate judge's order denying Mr. Osborne's release, this Court should find that there are pretrial conditions that can be imposed to assure Mr. Osborne's appearance and assuage any concerns about risk of flight.

### 1.  Nature and Circumstances of the Offense

Government counsel proffered Mr. Osborne's conduct on January 6, 2021, was:  "Mr. Osborne was struck by an officer as far as – as part of the effort of the officers to push people out of the Capitol, and [Mr. Osborne] reflexively turned around and began to, you know wrestle with the officer, grabbing his baton, so there is physical contact." Tr. at 29. However, there was no evidence proffered to support that Mr. Osborne initiated contact or struck the officer. *See id.* And Government counsel agreed that Mr. Osborne had no criminal arrests or convictions and was not a danger to the community. Moreover, when he was arrested, Mr. Osborne fully cooperated with law enforcement.

### 2. Weight of the Evidence

Government counsel proffered that the offenses charged in this case are on video, and Mr. Osborne has identified himself to the FBI as being the person in the video. *Id.* at 16, 29. However, even if this Court accepts the magistrate judge's findings on weight of the evidence, defense counsel notes that the weight of the evidence against a person is but one single factor for this Court to consider when deciding whether there are conditions of release that could reasonably assure the appearance of Mr. Osborne.

### 3. History and Characteristics of Mr. Osborne

Thomas Osborne is 40 years old and co-owns a home in Lakeland, Florida. For most of life, he has resided in Pennsylvania with his family, and in Lakeland, Florida, in a home co-owned by Mr. Osborne and his father. Notably, Mr. Osborne has no criminal arrets or convictions. At the time of his arrest, he was employed part-time at a gun shop. *See* Pretrial Services Report at 1. He understands he will have to secure different employment when released.

Government counsel and the magistrate judge were focused on flight risk mainly because of Mr. Osborne's friendship with the Pollocks and Mr. Worrell and the guns and survival kits in his home. Both concerns should be weighed against the fact that in the 2-3 years since Mr. Osborne learned that he was being investigated by the FBI, he did not hide and he did not flee. Mr.

Osborne stayed in the same home he was arrested in and cooperated fully and without incident when he was arrested.

### 4.  A Suitable Residence Alleviates any Concern of Flight Risk

At the time of his initial appearance, defense counsel proposed Mr. Osborne be released to his own home, because that was proposed by the Pretrial Services Office and counsel had no contact information for Mr. Osborne's family to propose an alternative residence. Mr. Osborne did not have access to his cell phone and he could not remember his father's or sister's phone numbers, so Pretrial Services and counsel were unable to contact his family.

Since his initial appearance, counsel has spoken by phone and email with this sister. From these conversations, undersigned counsel understands that Mr. Osborne maintains regular contact with his father and sister. His sister explained to counsel that there is no "trust fund" and that her father periodically sends money to her brother to help with his bills. Mr. Osborne's sister assures undersigned counsel that her brother, Mr. Osborne, can live with her and their father in Pennsylvania while Mr. Osborne faces these pending charges. She has spoken with her brother and is assisting her brother with his bills. His sister is also prepared to act as third-party custodian should this Court find that appropriate.

12

Defense counsel asks this Court to release Mr. Osborne to his sister's and father's residence in Pennsylvania and that Mr. Osborne's sister be appointed as a third-party custodian to assuage any concerns this Court may have about flight risk.

Mr. Osborne is prepared to abide by all release conditions that this Court imposes including GPS monitoring.

### Conclusion

Mr. Osborne respectfully asks this Court to review and reverse the magistrate judge's order of detention and to hold a hearing to consider appropriate conditions of release.

Respectfully submitted this 8th day of March, 2024.

**A. FITZGERALD HALL, ESQ.**
**FEDERAL DEFENDER**

*/s/ Samuel Landes*
Samuel Landes, Esq.
DC Bar No. 1552625
Assistant Federal Defender
400 N. Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Email: Samuel_Landes@fd.org

*/s/ Sylvia Irvin*
Sylvia Irvin, Esq.
Assistant Federal Defender
Bar No. 15379
400 N. Tampa St., Suite 2700
Tampa, FL 33602
Sylvia_Irvin@fd.org

13

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of March, 2024, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to:

AUSA Benet J. Kearney

*/s/ Samuel Landes*
Samuel Landes, Esq.
Assistant Federal Defender


*/s/ Sylvia Irvin*
Sylvia Irvin, Esq.
Assistant Federal Defender

14