UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 24 Cr. 094 (APM) |
| v. | : | |
| | : | |
| THOMAS PAUL OSBORNE | : | |
| | : | |
| Defendant. | : | |

**OPPOSITION TO DEFENDANT'S MOTION FOR
REVIEW AND REVOCATION OF DETENION ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to the motion by the defendant, Thomas Osborne, for review of the order by Magistrate Judge Amanda Arnold Sansone of the Middle District of Florida detaining the defendant pending trial (the "Motion or Mot."). As Judge Sansone correctly determined, Osborne should be detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2) [Serious Risk of Flight and/or Obstruction]. This Court should similarly order that Osborne be detained because there are no conditions or combination of conditions which will reasonably assure the appearance of the defendant as required and ensure the safety of any other person and the community.

**BACKGROUND**

1. **Procedural Posture**

On February 21, 2024, Osborne was indicted by a grand jury and charged with four counts: (1) Obstructing, Impeding, or Interfering with a Law Enforcement Officer During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), (2) Entering and Remaining in a Restricted Building or

Grounds, in violation of 18 U.S.C. § 1752(a)(1), (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2), and Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D). ECF 1.

On February 22, 2024, Osborne was arrested without incident at his residence in the Middle District of Florida. That same day, he appeared before United States Magistrate Judge Amanda Arnold Sansone. At that appearance, Osborne waived his identity hearing and requested that his detention hearing be conducted in the Middle District of Florida. *United States v. Osborne*, 24-mj-1280 (AAS), Feb. 22, 2024 Tr. (attached as Exhibit A) at 10-11. After hearing argument from the parties, Judge Sansone found that there was no condition or combination of conditions that would assure Osborne's appearance as required and ordered that he be detained. *Id.* at 34-35; 24 mj 1280 (AAS), ECF 9. Osborne now requests that this Court review and revoke that order.

2. **Factual Background**

   a. **Osborne's Conduct on January 6, 2021**

Osborne traveled to Washington, D.C. on January 5, 2021 with a group of individuals from the Lakeland, Florida area, including Jonathan Pollock, Olivia Pollock, Ben Pollock, Tina Pollock,[1] and Joseph Hutchinson. On the morning of January 6, 2021, the group attended then- President Trump's "Stop the Steal" rally near the Ellipse, then proceeded towards the Capitol. As they approached the Capitol, the group divided; some, including Jonathan Pollock, Olivia Pollock, and Joseph Hutchinson, continued into the restricted area around the Capitol building, where they assaulted police officers attempting to keep the mob from gaining access to the Capitol building. *See United States v. Jonathan Pollock, et al.*, 21 Cr. 447 (CJN), ECF 1

---

[1] Jonathan Pollock and Olivia Pollock are siblings. Ben and Tina Pollock are their parents.

(Complaint and Statement of Facts).  By approximately 2:43 p.m. Osborne was on the Lower West Terrace of the Capitol building, where the inaugural state was being constructed.  He ascended to the building's Upper West Terrace and climbed up and over a set of bleachers that had been erected there.  As he descended, he turned to face a group of officers from the Metropolitan Police Department ("MPD") positioned so the south, then turned to walk north, towards an entrance to the Capitol building that had been breached by rioters.

Police officers moved forward in formation not far behind Osborne, yelling "move back." As the officers approached, Osborne's back was to them; one officer pushed Osborne in the upper arm with his baton.  Osborne turned to face the officers; the officer used his baton to push against Osborne's chest.  Osborne put his hands under the baton, grabbed it, and maintained his grip as the officer attempted to regain control of the baton.  After several seconds, Osborne released his grip and was sprayed with OC spray by another police officer.  This altercation was captured both by MPD officers' body-worn cameras ("BWCs") and by an individual who appears to have been filming from the bleachers.

### b.  Jonathan Pollock, Olivia Pollock, and Joseph Hutchinson

Jonathan Pollock, Olivia Pollock, and Hutchinson were charged with various offenses arising out of their conduct on January 6, 2021.  *See United States v. Jonathan Pollock, et al.*, 21 Cr. 447 (CJN), ECF 1.  On June 30, 2021, agents with the Federal Bureau of Investigation ("FBI") executed a search warrant at the Pollock family residence in Lakeland, Florida and arrested Olivia Pollock.  Hutchinson was arrested in Albany, Georgia that same day.  Agents had a warrant for Jonathan Pollock's arrest, but he was not present at the Pollock residence and his cellphone had

been turned off. Despite efforts to locate him, Jonathan Pollock evaded detection by law enforcement until January 2024.

Olivia Pollock and Hutchinson had their initial appearances in the District of Columbia on July 8, 2021 and were released subject to bond conditions that included GPS monitoring. Their case was assigned to Hon. Carl J. Nichols, who set a March 6, 2023 trial date for Olivia Pollock and an August 7, 2023 trial date for Hutchinson. *See United States v. Jonathan Pollock, et al.*, 21 Cr. 447 (CJN), July 28, 2022 Minute Order; *id.* Feb. 14, 2023 Minute Order.

On February 25, 2023, a Pretrial Services Officer in the Middle District of Florida who was responsible for supervising Olivia Pollock received a tamper alert from her GPS monitor. The officer was unable to locate Olivia Pollock or her GPS monitor. On February 27, 2023, a Probation Officer the Middle District of Georgia who was responsible for supervising Hutchinson received a tamper alert from Hutchinson's GPS monitor. Subsequently, Hutchinson's monitor was located; it had been cut and hidden in a pail wrapped in tinfoil. Neither Olivia Pollock nor Hutchinson appeared for their respective trial dates.

On the night of January 5-6, 2024, the FBI executed a warrant at a ranch in Groveland, Florida and located all three fugitives.

c. **Identification of Osborne and Interviews with the FBI**

On July 1, 2021, the day after Olivia Pollock and Hutchinson were arrested and the Pollock residence was searched, Osborne went to a Polk County Sheriff's Office substation in Lakeland, Florida and reported that he was "AFO number 347."[2]  FBI agents subsequently interviewed

---

[2] The FBI posted to the internet "Be on the Lookout" ("BOLO") alerts for various individuals who had been involved in the events of January 6, 2021 and assigned them numbers with the prefix "AFO" (an abbreviation for "assault of a federal officer").

Osborne, who identified himself in images from the video footage described above. Osborne explained to the agents that he was reporting himself because an acquaintance had threatened to do so if Osborne did not turn himself in. Osborne was interviewed on one subsequent occasion, in September 2021.

### d. Christopher Worrell

On May 12, 2023, following a bench trial in front of Hon. Royce C. Lamberth, Christopher Worrell was convicted of violations of 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding), 18 U.S.C. § 111(b) (Assaulting, Resisting of Impeding Certain Officers with a Deadly or Dangerous Weapon), 18 U.S.C. § 231(a)(3) (Civil Disorder), 18 U.S.C. §§ 1752(a)(1), (a)(2), and (a)(4) (Entering and Remaining, Disorderly and Disruptive Conduct, and Engaging in Physical Violence in a Restricted Area), and 40 U.S.C. § 5104(e)(2)(F) (Act of Physical Violence in a Capitol Building or Grounds) in connection with his conduct at the Capitol on January 6, 2021. *See United States v. Worrell*, 21-cr-292 (RCL), ECF 245 at 6-14 (findings of fact). Worrell was scheduled to be sentenced on August 18, 2023. Pending his sentencing, Judge Lamberth continued Worrell's conditions of release, which included GPS monitoring.

On August 14, 2023, Worrell cut his GPS monitor. According to his girlfriend, who was also his third party custodian, he did not return home that night as required by his bond conditions. The FBI did not locate Worrell until September 28, 2023, when agents learned that Worrell had covertly returned to his residence, and arrested him there.

The FBI subsequently learned that, for the approximately six weeks that Worrell had absconded pending his sentencing, Osborne had been harboring Worrell at Osborne's residence. In December 2023, the FBI searched Osborne's residence and recovered certain of Worrell's belongings. During the course of that search, agents observed an incredibly high number of

firearms and a large amount of ammunition, as well as packed go-bags, throughout the house. FBI agents also searched Osborne's cellphone. That search recovered text exchanges with Worrell that appear to end in early August 2023 – days before Worrell cut his GPS monitor – and exchanges with Worrell's girlfriend, including a August 17, 2023 text in which Worrell's girlfriend sent Osborne a news article about the FBI's search for Worrell (https://winknews.com/2023/08/17/fbi-search-christopher-worrell-capital-insurrection/).

## ARGUMENT

Osborne is eligible for detention pursuant to § 3142(f)(2) [Risk of Flight/Obstruction] of the federal bail statute. Osborne has already demonstrated that he is willing is assist others in obstructive conduct by aiding Worrell in his own flight from prosecution and sentence. His connections to the network that harbored Jonathan Pollock for 2.5 years and Olivia Pollock and Hutchinson for approximately 10 months (and his go-bags placed around his house) show that he himself has the means to flee. Now that he has been criminally charged, he also has the motive to do so.

In determining whether to detain a defendant pending trial, the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. 18 U.S.C. § 3142(g). Although this Court's review of Judge Sansone's detention order is *de novo*, *see United States v. Brockhoff*, 590 F. Supp. 3d 295, 302 (D.D.C. 2022), the government respectfully submits that Judge Sansone correctly concluded that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community or the defendant's return to the Court and this Court should therefore order the Osborne remain detained pending trial.

**1. Nature and Circumstances of the Offense Charged**

The first factor the Court must consider is the nature and circumstances of the offenses charged, "including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). While all of the offenses arising from the January 6, 2021 breach of the Capitol are serious, Chief Judge Howell has set forth a number of considerations to differentiate the severity of the conduct of the hundreds of defendants connected to that event. *See United States v. Chrestman*, 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021). These considerations include whether a defendant: (1) "has been charged with felony or misdemeanor offenses"; (2) "engaged in prior planning before arriving at the Capitol"; (3) carried or used a dangerous weapon during the riot; (4) "coordinat[ed] with other participants before, during, or after the riot"; or (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct"; and (6) the nature of "the defendant's words and movements during the riot," including whether he "damaged or attempted to damage federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot." *Id.* at *7-8.

Here, while none of the charges against Osborne are "crimes of violence" within the meaning of Section 3142(g)(1), Osborne is charged with one felony and three misdemeanor offenses. These offenses are serious; they arise out of a confrontation with law enforcement during which Osborne attempted to wrestle a baton away from an MPD officer who was clearing a violent mob from the Capitol so that the electoral certification could resume. And, while there is no indication that he coordinated his interference with law enforcement with other participants in the

riot, his coordination with Worrell, another January 6 defendant, to assist Worrell in evading capture by law enforcement is concerning.

### 2. Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, clearly weighs in favor of detention. As discussed above, the evidence against the defendant includes BWC from MPD officers who responded to the Capitol on January 6, as well as video filmed by other individuals on the Capitol grounds. The video evidence is objective. Moreover, Osborne identified himself in the footage.

Evidence recovered from Osborne's residence and cellphone corroborates his involvement in the riot at the Capitol as well. FBI agents recovered the jacket and backpack that Osborne wore on January 6, 2021 (and which is consistent with what he is wearing in the BWC and other video footage) from his residence and his cellphone contained pictures that had been taken in Washington, D.C. and on the Capitol grounds on January 6, 2021, including a selfie photograph in which Osborne appears to have been sprayed with chemical irritant.

The evidence against this defendant is overwhelmingly strong, and accordingly, weighs heavily in favor of detention.

### 3. Defendant's History and Characteristics

Osborne's history and characteristics are indicative of both a willingness and an ability to flee and suggest a disinclination to abide by court orders.

*First*, Osborne had and maintained close ties with the Pollock family. Until his arrest in this case, he worked at Rapture Guns & Knives, which is operated by one of Jonathan Pollock and Olivia Pollock's brothers, and is thought of in the Lakeland community as the Pollock family's

shop.  Osborne also attended the same church and prayer meetings as the Pollocks.  The government believes that the Pollock family, in particular Ben and Tina Pollock, facilitated Jonathan Pollock and Olivia Pollock's flight, including by providing funding and supplies and by coordinating a network of individuals who were willing and able to harbor them.[3]  Nor were these efforts limited to Pollock family members. Hutchinson, who has no relationship to the Pollocks beyond friendship and possible employment at Rapture Guns & Knives, was also able to take advantage of this network to facilitate his flight and evasion of law enforcement for more than 10 months.  While Osborne may not have a passport or foreign ties, *see* Mot. at 4, the concerns presented by his access to the Pollocks' network are the same: he has the means to flee and avoid detection by law enforcement.

*Second*, Osborne himself harbored a fugitive and assisted him in successfully evading law enforcement for approximately six weeks, despite knowing that the FBI was searching for him, demonstrating a willingness to break the law to help his associates avoid apprehension.

*Third*, Osborne is prepared to make a quick and violent departure should the need arise.  As described above, Osborne had an incredible number of firearms and ammunition,[4] as well as many go-bags, stashed throughout his home.  During the December 2023 search, FBI agents noted the following:

- Main Entryway
    - A loaded revolver in the closet near the front door;
- Osborne's bedroom
    - An AR-15 platform rifle next to the bed;

---

[3] For example, one witness whom the FBI interviewed reported that the Pollock family communicated with Jonathan Pollock using a "drop phone" to talk to a "drop phone" that Jonathan Pollock had.

[4] The government does not have access to the MDFL pre-trial services report in which Osborne apparently reported owning only five firearms.  *See* Exhibit A at 17:16.

- - - o A shotgun underneath the bed;
      o Multiple handguns on top of the dresser;
      o Numerous loaded an unloaded magazines, rounds of different types of ammunition;
      o Go-bags that stored loaded magazines;
  - Kitchen
    o Handgun on counter;
    o AR-15 platform rifle on counter;
    o Numerous loaded and unloaded magazines, rounds of different types of ammunition;
    o Go-bags that stored loaded magazines;
  - Additional bedrooms
    o Handguns on shelves and desks;
    o Go-bags that stored loaded magazines;
  - Living room
    o Handgun next to recliner;
    o Numerous loaded and unloaded magazines, rounds of different types of ammunition;
    o Go-bags that stored loaded magazines;
    o Survival and camping equipment;
  - Vehicle
    o Handgun under driver's seat.

Osborne's initial cooperation with law enforcement – identifying himself as "AFO number 347" and agreeing to be interviewed – should not provide the Court with any assurance that he will not now flee. The Court should consider the context in which Osborne participated in these interviews: Four[5] of his associates on January 6, 2021 had just been arrested by the FBI, a fifth had fled. An acquaintance had threatened to turn Osborne in to law enforcement. At the time of the interviews, the FBI was focused on locating Jonathan Pollock and gathering information about the other four charged defendants; the agents did not give Osborne the impression that they were looking closely at Osborne's own conduct. And, at the time, Osborne's interest would have been

---

[5] In addition to Olivia Pollock and Hutchinson, the FBI also arrested two other members of Osborne's group on June 30, 2021 – Joshua Doolin, a cousin of the Pollocks, and Michael Perkins.

in providing assistance to the government, with the goal of potentially reducing his criminal exposure.

Those circumstances have changed. Osborne has now been charged and is facing four counts which carry a maximum cumulative penalty of up to 7.5 years. Seven months ago, when Worrell sought his assistance, Osborne did not turn him away or alert law enforcement. Rather, Osborne harbored him, itself a federal crime with additional exposure. Osborne's incentive to flee is now significantly increased. Osborne's recent statements also indicate that he has developed a cavalier attitude regarding his actions on January 6. At the end of January, he bragged to one individual that he was a "J6 provocateur" and was on the "FBI top 25 list," displaying a pride in and bravado about his role that day.

Osborne's history and characteristics weigh strongly in favor of detention.

4. **Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of detention. Osborne has spoken of engaging in violence in contexts other than January 6. He recently stated that he did not think it was a problem if someone were to blow up an abortion clinic, but stated that he would "never do that if someone were inside the clinic." This consideration of violence, particularly when combined with Osborne's ready access to a cache of firearms, is concerning and weighs in favor of detention.

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure that the defendant will comply with court orders, abide by appropriate

release conditions, and appear as required. The defendant's proposal that he be released to the custody of his sister does little to assuage these concerns.

## **CONCLUSION**

The government respectfully requests that the Court deny the defendant's motion to revoke Judge Sansone's detention order.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY: /s/ Benet J. Kearney
Benet J. Kearney
Assistant United States Attorney
N.Y. Bar No. 4774048
26 Federal Plaza
New York, NY 10278
benet.kearney@usdoj.gov
(212) 637-2260
Benet.Kearney@usdoj.gov

Brendan Ballou
Special Counsel
DC Bar No. 241592
950 Constitution Avenue NW
Washington, DC 20530
(202) 431-8493
Brendan.Ballou-Kelley@usdoj.gov